First case is number 25-1256 United States of America against Carlos Alberto Gascot Concepcion. Mr. Campbell. Good morning, your honors. Matt Campbell, Federal Public Defender for the District of the Virgin Islands on behalf of Carlos Gascot Concepcion, and I'd like to reserve five minutes for rebuttal. Granted. Your honors, this is a rather straightforward single issue case. As the court's aware, I've withdrawn the first issue, which was phrased as the first and second issue in the government's briefing, and we're proceeding simply on the jury instructional issue. So, it is a straightforward issue of whether the district court abused its discretion in denying Mr. Gascot's request for a simple possession instruction, a lesser included offense. And frankly, I don't believe that the parties have significant legal disputes as to what the controlling law is. There is no doubt that simple possession is a lesser included offense of possession with intent to distribute cocaine. We believe here that the district court did abuse its discretion by effectively granting summary judgment to the government based on DEA Special Agent Petaluga's testimony. Do you agree on the legal standard? I'm sorry? Do you think you agree on the legal standard as well? For when? When a simple possession instruction is warranted or appropriate. I believe we do, Your Honor. I think the law is relatively clear that a defendant is entitled to a lesser included offense instruction when sufficient evidence exists for a reasonable jury to find guilty of the lesser and acquit on the greater. It's sometimes stated that the instruction is appropriate if a jury could rationally find the defendant guilty of the lesser and acquit on the greater. All right. So, and that's what we said in the panel, not presidential opinion in Vacchese, correct? Yes, I believe so. Okay, so you're not taking issue with that standard. We're dealing with application of facts.  Okay, go ahead. And I think both the parties had decided the court's opinion at night for that, for the rational jury standard. What are the kinds of things that a judge can consider? Can the judge, you wouldn't dispute the judge can consider the quantity of the cocaine, correct? I think that's correct, Your Honor, and you dispute that the judge can consider the purity of the cocaine. I think the judge can consider the purity of the cocaine. The judge can consider the packaging of the cocaine. I think the judge can consider that, yes. The psycho bunny logo, the brick, those kinds of things here. The judge can consider whether or not he's a cocaine user, whether he's a cocaine addict. Of course. All right, well, and the judge, you know, the judge can consider that your client said he was visiting family here, but didn't have the usual luggage. Your Honor, I believe that to be true. However, I think in this case, that factor is a very limited application because clearly… But the district court considered all of these factors. And you've admitted that they're legally appropriate to consider. I think that's correct, that the district court considered them, and they are factors that the court can consider. However, I think the court misapplied those factors. Do we review that application for abuse of discretion? Yes. Okay. Why was the abuse of discretion here? Yes. Well, the abuse of discretion, I believe, comes in two parts. First of all, the jury was entitled to disbelieve every word that Agent Petaluga said. And the jury was, in fact, instructed, according to the standard instructions on experts, that they could disbelieve every word out of his mouth. The defense had cross-examined Agent Petaluga extensively about his limited experience in the Virgin Islands. His testimony was based on just usual experiences, not specific experiences to this case. He had no involvement or knowledge about this case. He only spoke of general tendencies. And the jury was told, it is up to you to decide whether to give significant weight, some weight, or no weight to his testimony, as well as the testimony of the chemist who also testified regarding the purity and the like. The jury was also entitled to credit the testimony of Mr. Gaskett's father, who testified that Mr. Gaskett started using drugs at age 14, that he used drugs daily, that he was taken to treatment in Chicago but escaped, that he used drugs constantly as an adult. Drugs were marijuana, not cocaine, correct? That was the specific substance that the father mentioned was marijuana. Okay. But we're trying to figure out whether this is a simple possession or possession with intent to distribute. And so it's going to matter that the drug that he had used and was in treatment for was not the same drug that he was charged with this time. That is certainly a factor that could be considered. Put another way, if the son had a problem of cocaine addiction, father would have testified to that and it would have helped his case, at least helped his argument that he was a user rather than a trafficker. I would concede that that would have been a stronger case. And there's no evidence at all that he used cocaine. There is no direct evidence that he used cocaine. Is there indirect evidence that he used cocaine? Well, I would say two things for that. I think it's common knowledge that marijuana is a gateway drug and often leads to other usage. I think also, was it sort of an opposite scenario? We were challenging sufficiency of the evidence. The government frequently argues reasonable inferences. I think the jury would be entitled based on the father's testimony about a 30 plus year drug history, erratic behavior caused by drugs that he often use drugs with friends, et cetera. All right. I think that makes a lot of sense.  I mean, if you look at the case, if he had an eight ball or something like that, right, then he looks like a guy who came to the islands to use cocaine or buy a little cocaine in St. Thomas to bring it back to use in Puerto Rico. Yes. So, so this is a case really come down to the quantity then is that. I mean, maybe maybe Mr. Sleeper will agree with me that if it were a small quantity, it sure looks like at least a reasonable juror could conclude it was for personal use. Yeah, I'm not going to argue that quantity is irrelevant, nor am I arguing that there needs to be a rule that every time possession with intent is charged, there has to be a lesser included offense. But I think we need to distinguish this case, which admittedly has one kilo from other cases and I can think of a case that attorney sleeper and I argued in front of this court that had 270 kilos in you would have a really tough argument. I would agree. And I was a trial lawyer we didn't make that argument. I would also agree that frequently we get MDLA cases with bales and bales of marijuana. I'm not arguing for a broad rule. But what I am arguing here if we look back to agent Petaluma testimony. The one kilogram when broken down to what a heavy user would use could be consumed in 100 days. And agent Petaluma also testified that it is dangerous to buy drugs, because the drug community can be a dangerous community. You can also get caught. Moreover, there was a fair amount of testimony about the cost. And whereas buying a one kilo brick. The estimate was $10,000. If one ended up buying one kilogram in eight balls, or the like, it would cost something like $42,000. So there are a lot of reasons why buying in bulk for a heavy user makes sense. It's safer, less likely to get caught with repeated buys, and you save money. Now I understand there was this testimony about the purity levels. Well, it is also a reasonable inference that a user would rather be using pure cocaine than cut cocaine. The less it's cut, the better the high, and it's less dangerous. Cocaine can be cut with fentanyl, and that can kill you. So, the fact that there's a purity issue here does not show that it necessarily was for distribution agent Petaluma never said people don't use 85% pure and common sense says that's what a user wants, because it gets a better high. So, that testimony, again, the jury was entitled to draw reasonable inferences from the testimony. And you're saying the district judge was unreasonable then in saying when I see a kilo brick of cocaine, very pure, wrapped up, that looks like dealer amount, quantity, packaging, etc., rather than user. You're saying the district judge was unreasonable. What I'm saying the district court was unreasonable to essentially say that no rational jury could conclude otherwise. That's what I'm saying. I think it's possible that two conclusions on any set of facts can be reasonable. But what I'm saying is, it was an abuse of discretion to say that no reasonable jury or no rational jury could possibly discredit agent Petaluma's testimony, credit the father's testimony, and draw inferences in Mr. Gaskett's favor. I see I'm out of time if the court has questions. Thank you, Mr. Thank you, Mr. Sleeper. Good morning, your honor's Adam sleeper for the United States. Welcome back. Thank you. I want to emphasize here that we are under abuse of discretion review. That's a very high burden for my friend on the other side to overcome. We're also dealing with a kilogram quantity of cocaine. When we look at comparable amounts of cocaine being challenged, courts have relied on amounts similar to that amount. How many days or weeks would it take a typical cocaine user to use a kilo of 85% pure? Well, there was that 100 days testimony out there. Oh, I guess if that was a that would be a very heavy user. You know, if you look at the rest of agent Petaluma's testimony, certainly he is not testifying that people actually use that much cocaine every day. And that would be for 100 days straight. I think the other thing in what we really think that the quantity alone would be enough to get us where we are in this case. And even if we look at the testimony of the father, the father is saying that his son uses drugs and can't even pay his rent because he's buying drugs. And the defense theory would have us believe that this person that is so addicted to drugs that he can't pay his rent is saving up $10,000 to be able to buy a kilo of cocaine. Are you arguing that the only rational inference is that it was obtained on consignment? I think that's that's the reasonable inference, Your Honor. If this person can't afford his rent, I don't think there's any reason to believe that an addict like is being argued in this case. I'm sorry on the briefs is someone that would be able to set up the scenario that we have here. But I also do want to address some of the other testimony because we didn't before you do that. Let me just you said earlier that you thought that the quantity alone is enough. If you're serious about that, I'm going to just explore that for a moment. So we're at one kilogram. At what point would it not for the quantity alone not be enough? You know what? Start with the eight ball. When you can see that if it's an eight ball, there has to be a simple possession instruction. I would absolutely. All right. So this is work up, you know, again, if that's relying solely on quantity, there could obviously be other evidence out there showing that. But since we're just dealing since I sort of invited that by saying quantity alone is enough. So I'm just curious to know in the future if we have a case where there aren't many other facts, but we have a quantity, you know, interesting quantity issue. When we draw the line, where would you want to draw the line? You know, where we are on the exact spectrum is difficult. You know, certainly I think I could concede the eight ball. You know, going up from there, you know, I think courts. Different courts, I think, across the country have sort of drawn that exact line. That we would draw it if we're trying to figure out us or the highest, actually, we want to figure out a safe harbor for. If you're saying a kilo is automatically enough, there's half a kilo automatically is 100 grams automatically enough. I certainly understand the court's interest in that question. I'm not sure that I can set an exact point and say, you know, the United States says at this point, this is no longer. And this is, you know, a distribution quantity versus not. First of all, it's not going to be a case. There's going to be the rare case where this is going to be quantity. You know, there's always going to be. Right. But that that seems to. Undermine your argument that quantity is enough. If we're always going to look at the totality of the circumstances, should we even. Why to just exclusively say quantity. Well, so let me say this. So, if we look at cotton out of the 6th and Castro out of the 9th, they said this this amount is enough. And that was 1.5 and a little under 2. now. What I don't think was presented in those cases, like, let's say if my friend on the other side had called as a witness, a friend of the defendant who had said, you know, I know that he travels once a year. You know, I've traveled over with him once a year. He travels to St. Thomas. He buys a kilo of cocaine. He uses that, you know, over the course of the year for solely personal use. And I know this and I've seen this. That's immensely unlikely. And there's a reason that that testimony didn't come out at this trial. But hypothetically, there could be other evidence that could undermine the quantity. Well, I guess what I'm saying is that's the Costco example. If someone is really a value shopper, and they're not afraid of the incarceration risk that comes with carrying around a kilo of cocaine, it is certainly cost efficient to go by 1 kilo rather than 50 drug deals. But you would have to be a foundation later, right? It's an immensely unlikely scenario. So there would need to be some evidence. Getting us to that point, but all that also seems to suggest it's the totality that this court and the district courts should be looking at all the facts. And then try to make a decision answering that question. Could a rational jury find that this was for personal use? Absolutely. And maybe I should rephrase what I was saying, because I'm not contending that you look at the quantity and that's the one factor. What I'm saying is you've got a sliding scale of evidence here. If you have one of those factors, like the amount that is so high. Yeah, if we had 200 kilograms, maybe you wouldn't need any other facts. Right. And maybe you could conceive of someone coming in with some testimony. I can't really conceive what that would be, but certainly they'd be entitled to put it on. And if there was evidence from which someone could draw that, well, maybe. But I think once we hit around the one kilogram quantity, what I'm looking at and as I'm putting these cases together is, unless there's something really persuasive to show, you can just look at the quantity and say that's enough. And what I would say is as you move down the quantity, other testimony could also get you there. For example, if we're looking at the pocket case out of the Seventh Circuit, that was only 63 grams, but they put on to expert testimony like we put on here, talking about the number of days that this would be needed for personal use, discussing the same sort of expert testimony that we put on. Now, there was also a prior conviction for possession with intent to distribute crack there, so that was also another factor bolstering that. Earlier, we were talking about, I guess, hypothetical situations where a user might buy a kilogram to use over 100 days. Is there any evidence in the record that users actually do that? They buy a kilogram for personal use? No, and I think that was the extremely conservative number that Agent Petaluga was talking about. When he was actually talking about what people were using, it was not 10 grams a day. And there was also evidence in there regarding branding, regarding packaging. We hit a lot of the bases that the jury is instructed to consider here, and really the only counteracting evidence was that this defendant uses drugs, has used drugs since he was a child. The only specific drug that was mentioned was marijuana. In fact, he was found with some small amount of green leafy substance on him while he was… I'm not sure how the packaging helps you. Isn't it true that the worst prototype of street-level addicts are very brand-sensitive and focus on getting the stuff that they rely on? I don't know that there's any evidence about that in this record here, Your Honor. I guess what I would also say is… What can the judge notice, though? I mean the quantity, packaging, because are we going to turn these… I'm sorry. When you say this, you mean the instruction? I don't understand. When the judge is trying to figure out what a rational jury could find, does the judge need to have testimony or expert reports or affidavits about quantities of typical use or packaging or things? At what point can the judge take official notice of these matters? Because you're going to be doing this stuff pre-trial. Does the judge need to have a hearing with evidence before the judge says, I'm not giving this lesser-cluded offense instruction? Because right now, I'm trying to understand how much the judge gets accused of usurping the jury's province or weighing the evidence or something like that. Well, Judge, I think what needs to be considered is what the jury could consider. So in some ways, that does require looking at the evidence. I know at least the practice in this court has generally been we fight out the jury instructions after the evidence has come in. Certainly, this is something that might be able to be done on proffer prior to, but the fundamental inquiry is what a rational jury would… There are some things that are so clear that we can go into trial and say, this boat had 200 kilos on it. There's no way I'm giving a lesser-included offense instruction no matter what. You're nodding at this, but there are going to be some downsides to this in terms of the parties planning their presentations and their openings and other things if this all has to wait until the charging conference at the end. Because maybe there are some thresholds at which the judge can make this ruling pre-trial. Well, I guess I'm not saying it couldn't be done pre-trial. I don't know that the pre-trial determination would be the final determination. I think I could conceive of a situation where a motion in limine is filed where the parties proceed by proffer as a way of sounding out this issue. Of course, then at trial, if those proffers don't play out, there could very well be something different. That might be a good approach, but just in terms of how we think about writing this stuff and giving guidance to district courts, it would be helpful to think through what if it's a matter of law, what if it is like proffers as to what will ultimately be proved up, and what if it has to wait until the charging conference at the end? But I do think fundamentally what the judge is doing here is saying, based on the evidence and based on the reasonable inferences that a jury could draw, could a rational jury make this, find not guilty on the greater and guilty on the lesser? And fundamentally, that's an evidentiary inquiry. Is a rational jury 12 rational people, or is it 10 rational people and 2 not so rational people? I was going to ask Mr. Campbell that, but I thought I'd try it on you first. I think it makes a difference, right? Because if I'm in Mr. Campbell's shoes, I'm hoping I've got, and if I'm in Mr. Campbell's shoes, and I think that a kilo sure looks like something other than simple possession, then I'm hoping that I've got a couple of people on the jury that are just sort of… We need one. Yeah, I just need one on the jury who's just sort of clueless. And if I've got 11 rational people and one clueless people, I've got a hung jury. So I understand what the court is saying. I think when we conceive of what a rational jury is, we don't conceive of it as a spectrum where there might be one juror who's one way, one juror's another. We think of it as 12 rational jurors. And here, I don't think that we hypothesize the potential juror who might have not been rational but would have gone for this anyway. I don't know if that's… I think we're looking at each of these jurors as rational jurors and assuming that all of them are rational rather than looking at a spectrum of potential jurors that could result in a mistrial. Does that answer the court's question? Unless the court has any further questions for me, I would just ask that the court affirm. Thank you, Mr. Sleeper. Mr. Campbell, could I ask you to start where we left off there about what is a rational jury? Yes. I think a rational jury is 12 jurors who make it through jury selection. I think that… 12 jurors who make it through jury selection. Correct. Yeah. So this is a big difference between 12 rational people. Yes. I think it's 12 jurors who make it through jury selection. And I think our system presumes… What guarantees that everyone who makes it through is rational? Well, I think that is the wisdom of our system, that we don't have a test at the beginning to see whether somebody's beliefs and somebody's mindset fits a certain paradigm. I think if somebody… I think what you're saying in some ways reflects the real world in the sense that if you put 12 people in the box in a case like this, some people are going to know right away what a kilogram of cocaine is. They're going to know what a kilogram is. Other people aren't even going to know what the word kilogram represents in terms of weight or shape or size. How can we accept your invitation to make that the legal rule? If we did that, then aren't we saying everything goes to the jury? What is the judge's role as gatekeeper? Is there any role for judge as gatekeeper if we accept your notion of what a rational jury is? Your Honor, I think there is, and I think there's several things that would guide decision-making in this area. I think – and there was some discussion about where's the line that a kilogram, half a kilogram, quarter, like that kind of thing. I don't think a court can set a line in that regard. What about 100 kilograms? Would that be a line? Your Honor, I think that would be a very difficult case for a defense team to make. But what I think is important to recognize here in this case… Even at 100 kilograms, it should go to the jury on a lesser included charge? I'm not saying that. What I'm saying is I think the standard should be look at the totality of circumstances of a case. Now, 1,000 kilograms of cocaine is going to be a very strong factor that is going to weigh against the defense from saying 1,000 kilograms is for personal use. But I think the standard needs to be totality of the circumstances. Let's stipulate to that. That makes perfect sense. But let's parse out the rational jury a little more. Let's assume you put 12 in a box, and I'm correct. People know what a kilogram is, and other people have no idea what it is. Sure. If we accept that it's the 12 people that make it into the box, we're taking away what happens at trial, right? Because even someone who's a neophyte, who has no idea what a kilogram is, doesn't know the difference between the metric system and our system… During the course of the trial, the point of the presentation is to educate the jury about these things, right? So, if the only testimony in the case is that this quantity is so large that it's trafficking quantity, not use quantity, is it rational for one of the jurors to go in the room and say, I don't know, I saw Scarface, and that guy put a brick out there, and Al Pacino had on his table, it looked like a brick, and he snorted all that in two days. Is that a rational juror? Well, again, I think we have to look to the totality of the circumstances. And in this case, defense counsel extensively cross-examined Agent Petaluga about his qualifications and about the conclusions that he drew from his experience. So I think it would be a different situation, for example, if Agent Petaluga got up on the stand, said what he said on direct, and defense said no questions. What if they had no expert testimony? If they had no expert testimony? Couldn't the court still have taken this away from the jury by saying, on these facts, short trip, suitcase with Harvey Adleman in it, kilo, pure, no evidence of use or sole use on these facts, regardless of Agent Petaluga. I'm not sending this to the jury on simple possession. So if we assume that Agent Petaluga never testifies, the rest of the testimony is the same. What I hear you say was that, and there's intuitive appeal to it, it's not the judge's province to decide whether Petaluga is a credible witness or a good witness or what he's saying makes sense.  Okay, and that was an intuitive appeal, but isn't it also true that the judge would have to be completely blind to the presentation of evidence to not take notice of short trip, suitcase, hardly anything in it, kilo of cocaine, etc. I think if Agent Petaluga had not testified, the judge absolutely could not refuse a lesser included offense instruction. I think that the factors Your Honor has just mentioned would be factors that the government could argue in closing argument to the jury for inferences. But if there is no testimony in Agent Petaluga's experience, how much is a user versus how much is a dealer? I don't see how a judge could possibly use knowledge from outside from other cases to conclude that it's not rational. So the judge couldn't take judicial notice that a kilo is an outlandish amount of cocaine to use on one or two or 25 nights. I don't think a judge could take judicial notice of that to preclude an instruction. If there's no testimony, I did have a couple of quick points, if the court would allow. If all 12 jurors are, by definition, rational, I don't know how a judge could never not send everything to the jury. He could never say a rational juror would never find that lesser included charge because by your definition, every juror is rational. And if you don't know until you give it to them, so you have to give it to the jury and see what they do. I am not asking for that ruling because I think that there are there could be circumstances and hypotheticals where the only conclusion is either possession with intent to distribute or not. And I'll just give you a very quick potential hypothetical. A thousand kilograms. The defendant goes to a buy site where the undercover DEA agent is going to buy the thousand kilograms. There's video of the whole thing, and the cell phones show two weeks of communications to set up that buy. And undisputed evidence that the defendant has never used drugs a day in his life. I think that would be a very difficult case. I think totality of circumstances. I think no rational jury based on the jury instructions and the testimony could possibly make that argument. But that's not what we have here. The last points that I did want to make is, I think it's important to remember, there was no what I would call affirmative evidence of distribution. There is no buyer, there is no communications, there's nothing like that. So, we're talking about a case that's all inferences. That's what this case is about. And in regard to matters like packaging, and, and the branding and that sort of thing. The government is, is using in. If A then B, that means if B then A. The fact that distributors use packaging does not mean that packaging equals distribution. It's just logically not true. And that's the rationale that the government repeatedly uses here. Just ask one fact question. If he were just using he could, he could get his cocaine in Puerto Rico. What's the explanation for why he would travel here to get a with a large empty suitcase to get a kilogram of cocaine. Yeah, I will candidly state that that issue was not factually brought out at trial. You know what the reason was to come to St. Thomas, but one can come up with potential reasons. Perhaps he had a. He knew somebody here who had that amount and was willing to sell it at a good price, but we don't know. Yeah, we don't have the answer to that last point I'll make is this was particularly prejudicial. There was the conversation about could you decide this pre trial or not. The defense only strategy was this was possession only. That was an opening statement that was in closing argument. So, this era was unquestionably prejudicial to the defense. Thank you, Mr. Campbell Thank you Mr sleeper the court will take the matter under advisement.